CHARLOTTE JONES, ADMINISTRATRIX, APPELLEE, V. MAR-
SHALL H. MCCULLY: DELMA GAGNE, APPELLANT.

285 N. W. 551

FILED APRIL 28, 1939. No. 30505.

S. E. Torgeson, L. Verne Holcomb and Rosewater,
Mecham, Shackelford & Stoehr, for appellant.

Roland V. Rodman, Barnard & Barnard and John H.
Kuns, contra.

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action brought against Marshall H. McCully
and Delma Gagne by Charlotte Jones, administratrix of the
estate of Adrienne Jones, deceased, to recover damages suf-
fered by the next of kin on account of the death of Adrienne
Jones in an automobile accident. The jury returned a ver-
dict for medical and funeral expenses of $1,050, and for
other damages, $3,822, making a total recovery of $4,872,
for which amount judgment was entered. Motion for new
trial was overruled. Defendants appeal.

The evidence discloses that Adrienne Jones, the deceased,
was driving her automobile west on State Highway No. 30
about 12 miles east of Kimball, Nebraska, and Marshall H.
McCully, of Los Angeles, was driving an automobile owned
and being ridden in by Delma Gagne, each of said cars
being a Chevrolet Tudor sedan, the Jones car being a 1937
model, the Gagne car being a 1936 model; that on June 30,
1937, at about 10:30 a. m., the collision occurred. U. S.
Highway No. 30 at this point is paved with oil mat, and
was in very good condition, with a broad white stripe

painted down the middle of the road. At the same time the Jones car came over a rise of ground, the Gagne car came over another rise of land about 1,100 feet directly west of them, and both cars were driven at a high rate of speed. The road sloped to the center, where the cement sides of a culvert projected at each side of the paving. There was not a curve, no obstruction of any kind, and a perfectly clear road. It was a cloudless day. Near the bottom of the decline the cars sideswiped each other, and the driver of the Jones car was either thrown or jumped from the car as it turned over several times, and died within a few minutes. No one else was injured in the wreck.

A state engineer testified that the road was about 23 feet wide. Dilys Jones, aged 17, testified that she was riding with her sister, who was killed, on this trip to California, and, in addition, a friend, Mrs. Hazlitt, accompanied them. Mrs. Hazlitt testified that they had stopped at Sidney for a lunch, and that she had taken the back seat, with a magazine to read, and did not have her eyes on the road, and did not know anything about it until they were hit and the car started to swerving from side to side and turned over. She climbed out through a front window and saw Adrienne Jones lying up in the road, with her sister standing over her, and immediately other cars stopped and people gathered around them.

The testimony of Dilys Jones was that they left Central City about 4 o'clock that morning, when it was dark. She said she was watching the Gagne car as it came towards them down the hill; that her sister was driving on the north side of the center line. Pictures introduced in evidence show that the Jones car was a wreck, with the fenders and top crushed in, and the glass broken, but all of the pictures in evidence show that the bumper on the Jones car appeared undamaged, indicating that they were sideswiped back of the bumper, the Gagne car probably first striking them at about the hub-cap on the left front wheel. The Gagne car was going at such a speed that it was not stopped by Mr. McCully until he had gone several hundred feet

down the road. The hub-caps were broken off, and the running-board and fenders on the left-hand side of the Gagne car were injured to the extent that it cost $35 to repair them at Sidney. He testified that they walked back to the scene of the accident, and found that the other car in overturning had headed back east; that there were 12 or 15 people there at the scene of the accident, and he only remained about five minutes, and then they drove to Sidney, where they had the car repaired at the Chevrolet garage. While it was being repaired they went to a picture show, where Sheriff Forsling, of Kimball county, found them, and they returned with him to Kimball. None of plaintiff's witnesses saw the defendants at the place of the accident, and this is one of the disputed questions of fact.

Mrs. Lydia Jones, the mother of Adrienne Jones, deceased, testified that the family moved to Chicago eight years ago from Cardiff, Wales, where her seven children were born; that the husband works two or three days a week as steel inspector; that the deceased daughter, Adrienne, was 26 years old, and at first she worked as a dress model at Carson, Pirie, Scott & Company and at Blum's Vogue on Michigan avenue, and in other exclusive shops in Chicago, where she earned around $40 a week, and gave $20 a week to her mother for household expenses. She said in 1936 Adrienne went to Hollywood and secured employment as a dress model in fashion shows, and in photography, and in the movies; that she was in "Styles of Hollywood" with Kay Frances, and was to be in "Fashions of 1938" if she had lived, and that she sent her mother $20 a week from Hollywood, with $50 extra at Thanksgiving. Exhibit No. 17 shows Adrienne posing in sports clothes, in a full-page picture in the April, 1937, number of the magazine, "Town and Country."

Marshall H. McCully was 57 years of age, and a resident of Los Angeles. He said that Delma Gagne was a friend of his, and they were driving from Los Angeles to Minneapolis, where they both had friends. As to the accident, he testified it occurred as follows: "Well, the car was coming down

at a pretty good speed, and I saw it coming from my direction, and I tried to get away from the car, but it crossed the line—it was utterly impossible. We were both coming pretty fast, and that car hit me like this (Indicating). It took my front wheel, the cap off my front wheel, and I pulled away from it and it slid along my running board and took the cap off my rear wheel, and so I put my brakes on my car and I let the car slide along and come to a stop."

Delma Gagne testified that she was the owner of the car driven by Mr. McCully, and that she resided at Glendale, California, with her mother, who was 85 years of age, and was present in the courtroom during the trial.

So far as the element of speed is concerned, considering the testimony of the witnesses and the great distance that each car ran after the collision, which was approximately 300 feet, it would be a fair conclusion that each of the cars was running at from 50 to 60 miles an hour at the time the accident occurred. At that speed, only five or six seconds would elapse from the time they first came in sight of each other, a thousand feet apart, and the moment of the collision near the culvert midway between the hills.

The defendants set out several propositions of law upon which they base their grounds for reversal. First, it is insisted there can be no recovery if the plaintiff's theory of how the accident occurred is contradicted by undisputed physical facts. In support of this proposition, they state that the evidence shows that the left front wheel of the Jones car was locked in such a manner that it did not turn after the Gagne car hit it, and that it was going at such a rate of speed as carried it, skidding from side to side, about 246 feet, with the front wheel locked, then it rolled over two or three times, and finally landed at the side of the road. An amateur photographer took pictures of these skid-marks within a few minutes after the collision, and it shows that the skid-marks made by the Jones car began at a point at least one foot north of the white line painted in the center of the road, and crossed the white line twice as it swerved back and forth.

The defendants argue that the reaction of the Jones car when the left front wheel locked would have been to take a course to the north, away from the center line, rather than over the center line, and because the car skidded over the center line defendants insist the only possible explanation is that the Jones car was proceeding diagonally towards the white line at the time of the collision, and that it struck the Gagne car. The plaintiff met this argument by showing that the photographs of the Jones car show that its bumper was not bent; that the jury examined the car itself, and that this question was clearly a question of fact for the jury to determine. In the opinion of this court, the evidence warranted the jury in reaching the conclusion that the McCully car, coming from the west, crossed the center line and struck the Jones car, locking the front left wheel, and damaging it in many other ways. There appears to be better grounds for claiming that, when a car going straight ahead is struck in the left front wheel, causing it to lock and slide, the car will be more apt to be drawn over to the left rather than to the right.

Defendants' next proposition of law is that, admitting that the Gagne car came over the middle line of the highway, this fact would not justify the driver of the Jones car in failing to use all reasonable care to avoid a collision, and that failure to use such reasonable care under the circumstances constituted more than slight contributory negligence, and would defeat a recovery. This was presented to the court in proffered instruction No. 4, which closed with the sentence: "In the event you do find Adrienne Jones could have avoided the collision in the exercise of due care or caution in view of all the circumstances surrounding the collision, then you shall find for the defendants, and each of them."

In support of this proposition, we are cited to the case of *Andrews v. Clapper*, 133 Neb. 110, 274 N. W. 209, which stated, in substance, that one having the right of way may not, on that account, proceed serenely unconscious of the surrounding circumstances; and that if, to a reasonably

prudent person, there appears to be a probability of a collision should he continue on his way, it would be his duty to waive his right of way if reasonably necessary to avoid that event.

In *Frish v. Swift & Co.*, 97 Neb. 707, 151 N. W. 165, it was said that the question in such case is not what a careful person would do under the circumstances, but that the question what he would be likely to do, or might reasonably be expected to do, in the presence of such peril is one of fact for the jury to determine.

If the driver of the Jones car had a ditch, and the cement upright of a culvert projecting at the side of the road, and a car coming diagonally across the road towards her from the other side, she may not have made the most judicious choice between the hazards presented to her in a fraction of a second of time, but to speculate that had she chosen differently she might not have been killed does not make her guilty of such negligence as defeats recovery by her estate. In our opinion, the court completely covered the point in dispute in his instructions.

Another proposition of law presented by the defendants is an attack upon instruction No. 3 given by the court on his own motion. It is claimed that the first sentence is abstruse and wholly unintelligible to a jury of laymen. Defendants say of it: "A lawyer, trained and skilled in breaking down and analyzing complex phraseology, might, and probably could, by resorting to the old-fashioned method of 'diagraming,' figure out what the court was trying to say in the first sentence," which reads as follows: "The burden of proof in this action, so far as such burden relates to the proof that the defendant Marshall H. McCully was guilty of negligence, if he was, in some one of the ways or manners alleged by the plaintiff and so far as such burden relates to proof that such negligence on the part of said defendant was the proximate cause of said collision and injury to and death of said Adrienne Jones and so far as such burden relates to proof of the extent of the damages

suffered by the next of kin of said Adrienne Jones, is upon the plaintiff."

We admit the above paragraph is not as clear as one would desire. Yet, this paragraph was followed in the same instruction No. 3 by short, definite, and clear paragraphs, in which the court submitted to the jury all of the separate acts of negligence charged by the plaintiff, and then explained each act of negligence, and then said: "If you find that each and all of the four above enumerated propositions have been so established as true by a preponderance of all of the evidence, and if you also believe that the plaintiff is not prevented from recovery on account of contributory negligence, if any, on the part of said Adrienne Jones under rules relating to contributory negligence hereinafter given to you, then you will find for the plaintiff as against both defendants." We are not upholding the first sentence of this instruction as a model of accurate diction, to be followed by other courts, but we do believe that, taking this long opening sentence in connection with the following ten numbered and lettered paragraphs in the same instruction, the whole of instruction No. 3 clearly stated to the jury the proper law upon the subject.

The defendants argued at considerable length, orally and also in the brief, that the introduction of the subject of insurance into the evidence was prejudicial to the defendants, and that on that ground alone this court must grant a new trial.

An examination of the bill of exceptions shows that John Manning, a mechanic for the Gibson Motor Company, of Kimball, Nebraska, testified that he had been directed by the sheriff to get the wrecked Jones car, and that he brought it back to their place of business. On direct examination by the plaintiff's attorney, he was asked these two questions and made these two answers, which are set out in both briefs: "Q. Do you make an examination to determine what is needed? A. Yes; in fact every wrecked car if the car is injured. The adjuster comes to adjust the loss with us and to find out what the total cost would be. Q. Did you

personally make an examination of the car that was involved in this accident? A. Yes; the adjuster for the insurance company came from Scottsbluff and he asked to see whether it was practicable to repair it or not, or whether it would be salvage."

The attorneys seem to agree that the word "injured" in his first answer is a mistake of the court reporter, for he is speaking of a wrecked car, which naturally would be damaged. Doubtless the witness used the word "insured" instead of "injured," and it is known by all familiar with Gregg shorthand that the words "insured" and "injured," if written rapidly, are written practically the same in that system. The defendants made no objections to these two questions, and made no motion to strike out the answers, which were given on the afternoon of the first day of the trial, but when court reconvened on the following day the defendants filed a motion with the clerk of the court for a mistrial on the ground of irregularity, accident, and surprise, which occurred, as they state, when one of plaintiff's witnesses testified upon direct examination that an insurance adjuster had examined one of the cars involved in the accident; that the defendants' attorneys could not have anticipated the answer which was given, and therefore no objection was interposed, but that said answer is prejudicial to the defendants, and moved that the jury be discharged and a new trial granted. This motion was overruled by the court.

In the case at bar, the witness Manning was referring to the plaintiff's car when he made the answers that injected the matter of insurance. No reference was made to the fact that defendant Delma Gagne had insurance on her car. Clearly, the defendants were not prejudiced by statements in evidence indicating that the plaintiff's car was insured. The applicable rule is that, where the defendants seek no affirmative relief against the plaintiff in an automobile damage case, evidence that plaintiff carries liability insurance should be dealt with by the court in the same manner as is any other inadmissible testimony.

We have carefully examined the entire record in this case, and all errors set out for reversal, but we do not feel warranted in extending this opinion to a greater length, and therefore conclude by saying that we find no prejudicial error, and the judgment of the trial court is hereby

AFFIRMED.